In the Interest of T.B. and T.B., Minor Children,

K.S., Father, Appellant, J.B., Mother, Appellant,

State of Iowa, Appellee.

No. 99–176.

Supreme Court of Iowa.

Jan. 20, 2000.

J. David Zimmerman of Pillers, Pillers & Zimmerman, P.C., Clinton, for appellant father.

Mary Lynn Wolfe of Wolfe Law Office, Clinton, for appellant mother.

Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General, and Ross J. Barlow, Assistant County Attorney, for appellee State.

Thomas D. Lonergan of Mayer, Mayer, Lonergan & Rolfes, Clinton, guardian ad litem for minor children.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

SNELL, Justice.

The father and mother appealed an order of the district court terminating their parental rights regarding two of their five children. The court of appeals reversed, concluding that the State had failed to prove by clear and convincing evidence that the children could not be safely returned to their parents' care. On further review, we now vacate the court of appeals' decision and affirm the judgment of the district court.

The sole issue in this case is whether the standard of proof had been established. The district court found the grounds existed for termination of both parents' parental rights as provided by Iowa Code sec-

tion 232.16(1)(g). Subsection four of that section and Iowa Code section 232.117 provide for termination of parental rights upon proof by clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time.

## I. Statement of the Case

█ Kevin S. and Jean B. are the parents of twin girls, Tarlesha and Tarnesha, born September 5, 1996, and the parents of three other children, Matthew, Mica, and Maya. The twins were born prematurely, and suffered a variety of ailments, including having cocaine in their system. Following their release from the hospital, the children were placed in foster care due to their parents' substance abuse. The Department of Human Services originally planned to place the children in foster care for only three weeks, but they were not returned to the parents after the parents tested positive for cocaine. In February 1997, all five children were adjudicated in need of assistance and placed in foster care. The three older children, however, were ultimately returned to their parents' custody. Neither Kevin nor Jean, however, expressed a similar interest in obtaining physical care of the twins.

On September 18, 1998, the State filed a petition to terminate parental rights, claiming Kevin and Jean had failed to satisfy the requirements of their case permanency plan, and that the children were closely bonded to their foster parents. Following a hearing, the district court entered an order terminating Kevin's and Jean's parental rights. Kevin and Jean have appealed. They contend the State failed to show by clear and convincing evidence the children could not be returned to their care, and that termination was not in the children's best interests.

Unlike many cases of termination of parental rights, in this case there is no claim of physical abuse of the children or expected abuse. The situation here disclosed is that of disinterest or apathy on the part of these parents toward the twin girls, Tarlesha and Tarnesha. These children have been in foster care for a substantial period of time. During that time, from November, 1996 until July, 1997, the parents' only visitation with these infants was one time a week for two hours. The evidence showed that for a drug-affected baby to be successful in recovering, frequent contact with their parents is necessary, not long in duration but at a minimum of three times a week. Some cause of this infrequent visitation may be that the primary focus of the Lutheran Social Services providers was to achieve reunification of the older children with their parents while maintaining contact with the younger children. Nevertheless, during the course of providing services, the parents showed hostility to the Lutheran Social Services providers and refused services in September, 1998.

In an attempt to provide more visitation, the mother, Jean, agreed on November 21, 1997, to increase visitation with the twins with the intent of reunification. Unfortunately, Jean had continual conflict with her work schedules which precluded increased visitation. Jean appears to have made her employment a priority. While Jean is certainly to be commended on her effort to be employed, the frequent change of employer and work schedule has adversely affected the goal of improving her infant twins' situation through an increase in visitation. To her credit, Jean has remained clean of any illegal substances since February 1997, and has complied with the case plan as far as substance abuse and parenting classes are concerned.

The father, Kevin, had difficulties in supervising five children when Jean was working. When both were at home, Jean complained that Kevin was of little help. Jean admitted that visitation with all five children was just too much for her. When visitation did occur, she was too preoccupied with cleaning, running errands or attending to the needs of the three older children to give the twins the attention they needed.

A change in jobs by Jean required a reduction of visitation rather than an increase. The twins were responding to visits with aggressive throwing, biting and hitting. Even on days off or periods when she was not working, invitations to Jean to increase visits went unheeded.

Jean canceled some scheduled visits and failed to visit one of the twins who was hospitalized. Their premature births necessitated sixteen visits to a physician which were ignored by their parents. No cards or birthday gifts were sent.

The twins do not appear to be bonded to their parents. Testimony was given that they have shown an ability to bond with foster parents. No evidence was presented that they would not be able to bond with another person. Jean admitted a lack of attachment to the twin girls and has said she could not be successful raising five children. The explanation for this apathy offered by Jean was that the twins "don't feel like her children."

Kevin, their father, is on social security, lives in the home but has not complied with the Social Services' case plan as written. He has received substance abuse counseling in the form of a sponsor but at times has refused substance abuse counseling. He has taken medication as required but does not work with the Department of Human Services providers. Kevin has been in and out of the home continually and at one point had a no-contact order against him. His focus is on a perception that the children were removed due to racial bias. There is no evidence to support this idea.

Parenting sessions with both parents have been unproductive. Kevin appears to be unable to stay on the task at hand, but continues to bring up the topic of the removal of the three older children, which he claims was unfair and racially biased. On one occasion, the case worker found the three children unsupervised in a van while Kevin hid in the woods from the police.

## II. Law Principles

In assessing the adequacy of proof by the standard of clear and convincing evidence, we apply our other legal principles as constant guides. Our court's primary concern is the best interest of the child. *In re R.L.F.*, 437 N.W.2d 599, 600–01 (Iowa App.1989). The future can be gleaned from evidence of the parents' past performance and motivations. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). A child's rights and needs are paramount in parental termination proceedings. *In re S.A.*, 502 N.W.2d 23, 25 (Iowa App.1993). We give weight to the fact findings of the juvenile court but are not bound by them. *In re R.L.F.*, 437 N.W.2d at 600.

## III. Decision

Our review convinces us that by clear and convincing evidence the State has proved the justification for termination of the parental rights of Kevin S. and Jean B. in their children, Tarlesha and Tarnesha, on the grounds charged. The juvenile court is affirmed in its judgment.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**