# IN THE COURT OF APPEALS OF IOWA

No. 16-1362
Filed October 26, 2016

**IN THE INTEREST OF S.R. and M.R.,**
**Minor children,**

**T.E., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Webster County, Angela L. Doyle, District Associate Judge.

A father appeals the termination of his parental rights to his children. **AFFIRMED.**

Neven J. Conrad of Baker, Johnsen, Sandblom & Lemmenes, Humboldt, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Daniel L. Feistner, Humboldt, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to two of his children, S.R., born in 2008, and M.R., born in 2000. He argues the State failed to make reasonable efforts to reunite him with the children, and he challenges the State's proof of the grounds for termination. Because the State met its statutory requirement to make reasonable efforts to reunite the family and its burden of proving the grounds for termination by clear and convincing evidence, we affirm.

**I. Background Facts and Proceedings.**

The father has four children. The juvenile court terminated his parental rights with respect to the two youngest children in February 2016, and this court affirmed the termination following the father's appeal. *See In re Z.R.*, No. 16-0351, 2016 WL 1703215, at *3 (Iowa Ct. App. Apr. 27, 2016). In doing so, we observed:

> The family first came to the attention of the Iowa Department of Human Services [(DHS)] in 2010. At that time, Z.R. and W.R. resided with their two [siblings] and their parents . . . . [The father] and [the mother] were not able to provide the children with a sanitary and safe home. The family home was filled with garbage. Old food and dirty dishes were stacked on the countertops, stove, sink, and floors. Dirty laundry was scattered throughout the home. Large cat-litter boxes were filled with cat feces. A child abuse assessment was founded and the family began to receive intensive services from the [DHS].
> Shortly after the founded assessment, [the father] and [the mother] separated, and the children resided with [the mother]. In June 2013, the four children were placed in crisis day care and family foster care because [the mother]'s mental health status deteriorated and she suffered suicidal ideations. The children were returned to [the mother]'s care when she returned from the hospital against medical advice on July 8, 2013. From that date through February 2014, the children were voluntarily placed with relatives or family foster care on several occasions when [the mother] was

admitted to the hospital for mental health treatment. Z.R. and W.R. remained in family foster care after February 2014 following another hospitalization of [the mother]. From the time of [the mother] and [the father]'s separation through February 2014, [the father] was unable to care for the children due to his own mental health conditions and inability to provide self-care.

*Id.* at *2.

Two weeks after parental rights to the younger children were terminated, the father was arrested for possession of drug paraphernalia and possession of methamphetamine. The father completed a substance abuse evaluation on March 4, 2016, but he only participated in substance abuse treatment "about every other week" and failed to submit to drug testing as required. After his arrest, the father was evicted from his apartment and stayed at the Beacon of Hope until he found another apartment. Although the father obtained a two-bedroom apartment, he did not allow a DHS worker to see the second bedroom because another person was staying with him. The father failed to disclose this person's presence to allow the DHS to conduct a background check, as he was required to do in his DHS contract of expectations.

In May 2016, the State filed a petition to terminate the parental rights of both parents to S.R. and M.R. Following a hearing in July 2016, the juvenile court entered its order terminating parental rights pursuant to Iowa Code section 232.116(1)(f) and (g) (2015).[1]

---

[1] Termination of the mother's parental rights is not at issue in this appeal.

**II. Scope and Standard of Review.**

We review orders terminating parental rights de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the juvenile court's fact-findings, though we are not bound by them. *See id.*

**III. Reasonable Efforts.**

The father first argues the State failed to make reasonable efforts to reunite him with the children, as required by Iowa Code section 232.102(7) (requiring the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). *See also In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Although the reasonable-efforts requirement is not a strict substantive requirement for termination, the services provided by the DHS to reunify parent and child after removal impacts the State's burden of proving the child cannot be safely returned to the care of a parent. *See id.* Here, the father claims that in spite of his repeated requests, the DHS never gave him an opportunity to increase his visitation with the children. He also claims the DHS never intended to reunite him with the children.

Although the father did not receive the visitation he wanted, the State met its statutory requirement to make reasonable efforts to reunite the family. The record shows the father experienced short-lived periods where he was able to demonstrate progress in his abilities and, as a result, was given more visits with lessened supervision. However, it was the father's own actions that resulted in a return to increased supervision and visits that occurred outside of the father's home. As the juvenile court noted, the father "is described as very volatile" and

incidents in November 2014 and June 2015 led DHS workers to call law enforcement because the father "was out of control" and the workers "feared for their safety." The juvenile court also observed that when the father is frustrated, "[h]e swears, screams, makes threats, and calls names." He directed this behavior not only at the DHS workers and service providers but at one of the children. The denial of the father's request for increased visitation was necessary and in the children's best interests.

**IV. Statutory Grounds For Termination.**

The father also argues the State failed to prove the grounds for termination. The juvenile court terminated the father's parental rights pursuant to section 232.116(1)(f) and (g). However, we may affirm the termination of his parental rights upon finding the evidence supports termination on one of these grounds. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015).

The juvenile court may terminate parental rights pursuant to section 232.116(1)(f) if clear and convincing evidence establishes the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father does not dispute the first three elements have been proved but argues the State failed to prove the fourth element, claiming the children can be "immediately" returned to his care. We disagree.

Although the father has been receiving services from the DHS since 2010, concerns about his ability to parent the children safely remain. The father has failed to address his substance abuse issues adequately and is unable to control his anger when he is frustrated. At the time of the termination-of-parental-rights hearing, his visits with the children remained supervised due to these concerns. Although the father was able to make short-term improvements during the six years the DHS was involved with the family, these improvements were not permanent. The father is simply unable to meet the children's needs. Based on the father's history, it is unlikely the children could ever be returned to the father's care without risk of harm befalling them. *See In re T.B.,* 604 N.W.2d 660, 662 (Iowa 2000) ("The future can be gleaned from evidence of the parents' past performance and motivations.").

The State proved the grounds for terminating the father's parental rights under section 232.116(1)(f) by clear and convincing evidence, the children's best interests are served by terminating the father's parental rights, and none of the statutory exceptions to termination set forth in section 232.116(3) are applicable here. *See In re P.L.*, 778 N.W.2d 33, 40-41 (Iowa 2010) (setting forth the three-step analysis in termination-of-parental-rights cases). Accordingly, we affirm.

**AFFIRMED.**